IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRISON LEGAL NEWS,<br><br>    Plaintiff,<br><br>  v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>    Defendants.<br>_____/ | No. C 07-02058 CW<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR RECOVERY OF ATTORNEYS' FEES AND COSTS |

Plaintiff Prison Legal News has filed a motion for recovery of reasonable attorneys' fees. Defendants oppose the motion. The motion was decided on the papers. Having considered all of the papers filed by the parties, including Defendants' sur-reply and Plaintiff's opposition to the sur-reply, the Court grants Plaintiff's motion in part and denies it in part.

BACKGROUND

Plaintiff Prison Legal News (PLN) is an organization that alleged that the California Department of Corrections and Rehabilitation (CDCR) illegally censored its publications. In January, 2006, the parties entered into an agreement to negotiate

in order to settle Plaintiff's claims and to avoid litigation. In December, 2006, the parties entered into a settlement agreement. The settlement agreement provided for payment to PLN as the prevailing party through December 11, 2006, the date the settlement agreement was executed. However, Defendants opposed PLN's request for attorneys' fees and costs for work performed after the agreement was executed. On October 9, 2007, PLN moved to recover fees and costs incurred between December 12, 2006 and August 31, 2007 and to establish a semi-annual fee process.

The Court granted the motion in part and concluded that, because PLN is the prevailing party in this action, it is "entitled to attorneys' fees for work performed after the settlement agreement was signed." Docket no. 35 at 5. The Court denied PLN's request to establish a semi-annual fee process but noted that PLN could file further motions for attorneys' fees. PLN now moves the Court to order Defendants to pay $143,322.96 in attorneys' fees, costs and expenses for work performed from September 1, 2007 through October 15, 2008.

DISCUSSION

I.  Reasonableness of Fees

In the Ninth Circuit, reasonable attorneys' fees are determined by first calculating the "lodestar." Jordan v. Multnomah County, 815 F.2d 1258, 1262 (9th Cir. 1987). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996). There is a strong presumption that the

2

lodestar figure represents a reasonable fee. Jordan, 815 F.2d at 1262. However, the court may adjust the award from the lodestar figure upon consideration of additional factors that may bear upon reasonableness. Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975). The twelve Kerr factors are (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. Id.

The Supreme Court has recognized that, while it is appropriate for the district court to exercise its discretion in determining an award of attorneys' fees, it remains important for the court to provide "a concise but clear explanation of its reasons for the fee award." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); Hall v. Bolger, 768 F.2d 1148, 1151 (9th Cir. 1985) (in computing an award, the district court should provide a "detailed account of how it arrives at appropriate figures for 'the number of hours reasonably expended' and 'a reasonable hourly rate'") (quoting Blum, 465 U.S. at 898).

A. Work Performed

Plaintiff requests a total of $143,322.96 in fees and costs

3

for work on the case between September 1, 2007 and October 15, 2008. This amount represents $54,382.67 for work to ensure and enforce compliance with the settlement agreement, and $88,940.29 for fees work. Defendants argue that 55.25 of the 162.7 hours billed by Plaintiff's counsel are unreasonable because they are for work not relevant to the settlement agreement or not benefitting Plaintiff. Defendants separated these 55.25 hours into three sub-categories, (1) 4.8 hours of work related to inmate issues, (2) 26.7 hours of work related to corresponding with inmates, and (3) 23.75 hours for work related to general censorship issues.

First, Defendants categorize 4.8 hours of Plaintiff's counsel's work as related to inmate issues not relevant to the instant case. The Court reviewed these charges and concludes that they reasonably relate to the settlement agreement. Second, Defendants charge that any direct communication with inmates by Plaintiff's counsel in the course of enforcing the settlement agreement is unreasonable because all communication can come from PLN. The Court disagrees. Nothing in the settlement agreement requires Plaintiff's attorneys to communicate on settlement enforcement issues only with PLN. Moreover, the settlement revolves around PLN's right to deliver its publication to prisoners in Defendants' custody. Thus, the prisoners themselves are often in the best position to observe whether the settlement agreement is being enforced. Defendants also question the reasonableness of time spent corresponding with inmates in inform them about the settlement agreement. Defendants note that because the Court, in a previous order, allowed Plaintiff's counsel to bill for time spent

4

preparing press releases about the settlement, it is duplicative and unreasonable to discuss the settlement agreement with prisoners individually. The Court disagrees. To enforce the settlement agreement, prisoners must understand their rights and privileges under the agreement. Addressing prisoners' questions and concerns is integral to this process.

Third, Defendants argue that 23.75 hours of work billed relates to censorship issues outside the scope of the settlement agreement. Paragraph 1(i) of the settlement agreement states,

> The parties agree that the CDCR will develop a centralized list of disapproved magazines or publications that are prohibited as offensive, threatening, contain security concerns, or obscene as described in the DOM, or any other regulation. The CDCR will provide a copy of that list to PLN's attorneys within 30 days after it is issued. The parties agree that the centralized list is not the only method to prohibit publications, and that nothing prohibits institutions from disallowing material as described in the DOM, or any other regulation, provided it meets constitutional requirements.

Defendants argue that Plaintiff's counsel can charge for work related to the creation of the "centralized list" described above, but not for issues relating to CDCR's prohibition of other materials from institutions. Plaintiff's counsel counter that addressing other censorship issues directly relates to enforcing the section of the settlement agreement that notes that institutions may still disallow "material as described in the DOM, or any other regulation, <u>provided it meets constitutional requirements</u>." (Emphasis added). What Defendants describe as "censorship issues," Plaintiff's counsel argue is really work done to ensure that all exclusion of material satisfies the requirements

of the constitution.

Although the settlement agreement revolves around PLN's allegations that the CDCR censored PLN publications, the agreement does not provide a mandate for PLN to police the constitutionality of all prison-censored material. Rather, the agreement noted that "[t]he parties agree" that all other means of disallowing material are still available to prisons, "provided [they] meet[] constitutional requirements." The parties simply agreed that CDCR would follow prison rules and the constitution. They did not agree that PLN would serve as the enforcement arm of all censorship issues for all prisoners indefinitely. Therefore, Plaintiff's counsel's fees for 23.75 hours of work performed in relation to prison material that was censored under the DOM or other regulations will not be reimbursed.

B. Hourly Rate

Determining a reasonable hourly rate is a critical inquiry. Jordan, 815 F.2d at 1262 (citing Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)). In establishing the reasonable hourly rate, the court may take into account: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained. See Cabrales v. County of Los Angeles, 864 F.2d 1454, 1464 (9th Cir. 1988). These factors are subsumed in the initial lodestar calculation, and should not serve as independent bases for adjusting fee awards. Morales, 96 F.3d at 363-64. The reasonable rate inquiry should also be informed by reference to the prevailing market rates in the forum district. Gates v. Deukmejian, 987 F.2d

1392, 1405 (9th Cir. 1992).

Plaintiff seeks an hourly rate of $740 for Sanford Jay Rosen, a 1962 law school graduate and the lead attorney on its case, $370 for Amy Whelan, a 2001 law school graduate, $340 for Kenneth Walczak, a 2003 law school graduate, and $170 for Melanie Wilkinson, a paralegal.  These rates represent Plaintiff counsel's 2008 rates.  Defendants argue that Plaintiff's counsel should not receive 2008 rates for work performed in 2007.

"District courts have the discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rather than historic rates in order to adjust for inflation and loss of the use funds."  Gates, 987 F.2d at 1406.  In Missouri v. Jenkins, the Supreme Court allowed current billing rates to apply to legal work performed several years before the fees were awarded.  491 U.S. 274, 284 (1989).  The Court noted that "clearly, compensation received several years after the services were rendered -- as it frequently is in complex civil rights litigation -- is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings."  Id.  The Court then held that "an appropriate adjustment for delay in payment -- whether by the application of current rather than historic rates or otherwise -- is within the contemplation of the statute."  Id.

In the present case, Plaintiff's counsel is not seeking compensation for work performed years earlier.  Rather, Plaintiff's counsel seek fees for work going back to September 1, 2007. Although this delay is not as long as in Jenkins, the Court

7

recognizes that "a fee award at current rates is intended to compensate prevailing attorneys for lost income they might have received through missed investment opportunities as well as lost interest." <u>Gates</u>, 987 F.2d at 1406. Therefore, Plaintiff's counsel shall be paid at 2008 rates for the work performed in 2007.

Defendants also argue that the 2008 rates are unreasonable and that the Court should adopt the Laffey Matrix to determine rates. The United States Department of Justice uses the Laffey Matrix to determine reasonable hourly rates in the District of Columbia in fee-shifting cases. The Court declines to adopt the matrix in this case. As noted above, local prevailing market rates inform the reasonable rate inquiry, <u>Gates</u>, 987 F.2d at 1405, and Plaintiff's counsel provide ample evidence that its 2008 rates are reasonable by citing to eight local law firms that charge similar 2008 rates. <u>See</u> Rosen Dec. ¶ 56. Therefore, the Court will not reduce the hourly rates claimed by Plaintiff's counsel.

II. Settlement Obligations

Despite substantial progress made by Defendants in fulfilling the settlement agreement, the Court declines Defendants' request to conclude that CDCR has completed all of its obligations under the settlement agreement and that no more fees applications may be submitted by Plaintiff. Defendants are mistaken that all of their obligations are complete simply because they distributed a centralized list of banned publications to all adult institutions and distributed an internal memorandum about updated inmate mail regulations. <u>See</u> Brinkman Dec. ¶ 14, Ex. H. Defendants obligations do not end with merely completing these two tasks. In

8

the settlement agreement, Defendants have agreed to stop many practices, such as requiring the PLN to use special, approved vendor labels when distributing publications to CDCR inmates; and Defendants have also agreed to engage in other practices, such as notifying inmates and publishers when they disallow a publication. See Brinkman Dec. Exh. A ¶¶ 1(b) and (h). Defendants shall continue to follow the terms of the settlement and Plaintiff's counsel may incur reasonable fees ensuring that they do so.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for attorneys' fees is GRANTED in part and DENIED in part (Docket No. 39). The Court awards Plaintiff $137,502.46 in fees and expenses,[1] to be paid forthwith by Defendants.

IT IS SO ORDERED.

Dated: 12/5/08

CLAUDIA WILKEN
United States District Judge

---

[1] $137,502.46 = Total fees requested ($143,322.96) minus fees for work that related to censorship issues outside the scope of the settlement agreement ($5,820.50). The $5,820.50 figure was calculated as follows: (Sanford Jay Rosen (0.9 hours x $740 per hour = $666)) + (Amy E. Whelan (4.65 hours x $370 per hour = $1720.50)) + (Kenneth M. Walczak (2 hours x $340 per hour = $680)) + (Melanie E. Wilkinson (16.2 hours x $170 per hour = $2754)) = $5,820.50.

9